UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DAVID LAMB,

                 Plaintiff,                                Hon. Janet T. Neff

v.                                              Case No. 1:08 CV 648

ROBERT PREVO, et al.,

                 Defendants.

_____/


## REPORT AND RECOMMENDATION

       This matter is before the Court on Defendants' Motion for Summary Judgment, (dkt. #15) and Plaintiff's Motion for Summary Judgment, (dkt. #26).  Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Plaintiff's motion be **denied**, Defendant's motion **granted**, and Plaintiff's action **dismissed**.


## BACKGROUND

       The following allegations are contained in Plaintiff's complaint.  (Dkt. #1).  As of July 16, 2007, Plaintiff was incarcerated at the Riverside Correctional Facility.  At approximately 9:45 p.m. on that date, Plaintiff began his shift as a "midnight cook."  Plaintiff soon thereafter began to experience "a migraine headache which affected [his] movement, breathing, and caused uncontrollable tearing."  Plaintiff sat down and began to experience a seizure lasting "about one to two minutes."

       Officer Harris telephoned Health Service on Plaintiff's behalf and was informed that Plaintiff could not be examined at the moment because "they were with a heart attack patient."  Harris

was instructed to contact Health Service later in the evening.  When Harris telephoned Health Service a second time, he was again informed that Plaintiff could not presently be examined because they were treating a heart attack patient.  When Harris telephoned Health Service a third time, he spoke with Defendant Prevo, a registered nurse.  Harris explained to Prevo what had occurred and Prevo asked to speak with Plaintiff, who informed Prevo that he "just had a seizure coupled with a migraine headache." Defendant Prevo instructed Plaintiff to "fill out a Health Service kite."

Plaintiff then returned the telephone to Harris who continued to speak with Prevo.  After ending his conversation with Defendant Prevo, Harris informed Plaintiff that Prevo would not examine him and that he should return to his unit complete a Health Service kite.  Plaintiff returned to his unit and completed a Health Service kite.  Plaintiff submitted additional medical request kites on July 19, 2007, and July 20, 2007.  On July 24, 2007, Plaintiff learned that Defendant Prevo had placed Plaintiff "on call to see the nurse" later that day, "however, this call out was cancelled."  Plaintiff also submitted a grievance against Defendant Prevo alleging that his actions constituted a violation of his Eighth Amendment rights.  Defendant Saladin denied Plaintiff's Step I grievance.

Plaintiff initiated the present action on July 9, 2008, against Defendants Prevo and Saladin.  Plaintiff asserts that Defendant Prevo denied his requests for health care in violation of his Eighth Amendment rights.  Plaintiff asserts that Defendant Saladin conspired with Defendant Prevo to deflect responsibility for the violation of Plaintiff's Eighth Amendment rights to Officer Harris. Defendant further asserts that Defendant Saladin acted with "deliberate indifference."  Plaintiff seeks injunctive and monetary relief.  Defendants now move for summary judgment.  Plaintiff has also moved for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 257 (1986)).

Once the moving party has met its burden of production, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324).  While the Court must view the evidence in the light most favorable to the nonmoving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357.  The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252).  The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative

evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.


## ANALYSIS

### I.        Plaintiff's Eighth Amendment Claims Against Defendant Prevo

Plaintiff's denial of medical treatment claims against Defendant Prevo fall into two categories: (1) July 16, 2007 incident and (2) requests for medical treatment contained in the medical request kites Plaintiff later submitted. The Court will address each category of claims separately.


#### A.        July 16, 2007 Incident

As discussed above, Plaintiff asserts in his complaint that after informing Defendant Prevo that he "just had a seizure coupled with a migraine headache," Prevo refused to examine him and

instead instructed him to "fill out a Health Service kite." Plaintiff claims that Defendant Prevo's conduct violated his Eighth Amendment rights.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The analysis by which Defendant Prevo's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. In this respect, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. If the objective test is met, the Court must then determine whether Prevo possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, Plaintiff must establish that Defendant Prevo "actually knew" that he "faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it." *Howard v. Calhoun County*, 148 F.Supp.2d 883, 888-89 (W.D. Mich. 2001) (citing *Farmer*, 511 U.S. at 847).

In support of his motion for summary judgment, Defendant Prevo has submitted an affidavit in which he makes the following assertions. (Dkt. #16, Exhibit 1). Prevo spoke with Plaintiff on July 16, 2007. Plaintiff stated that he was experiencing a headache and that he "hadn't done anything to injure his back or neck." Plaintiff "was conscious, aware what was happening, and although his voice was pressured, his speech was clear." Plaintiff "did not tell [Prevo] that he thought he had a seizure." Plaintiff's description of his symptoms did not indicate that he required immediate emergency medical attention. Nevertheless, Prevo "decided to have [Plaintiff] sent to health care to be evaluated." Prevo instructed Officer Harris "to have Plaintiff complete a health care request form and to send Plaintiff to Health Services." Several hours later, Prevo contacted the control center "to check on [Plaintiff's] whereabouts." Prevo was informed that Plaintiff "had gone back to his unit." *Id.* As discussed in more detail below, Plaintiff has failed to submit *admissible* evidence sufficient to overcome the evidence submitted by Defendant Prevo.

Plaintiff claims that he contacted Defendant Prevo to obtain treatment for the seizure he allegedly suffered. Even if the Court assumes that Plaintiff suffered a seizure as alleged (i.e., was experiencing a serious medical need), thus satisfying the objective prong of the analysis, the evidence submitted by Prevo establishes that he was not aware of the seriousness of Plaintiff's condition. Prevo asserts in his affidavit that Plaintiff never stated that he had suffered a seizure, but instead merely reported that he was experiencing a headache. Defendant Prevo further asserts that he did not refuse to examine Plaintiff, but instead instructed Officer Harris "to have Plaintiff complete a health care request form and to send Plaintiff to Health Services."

This evidence demonstrates that Defendant Prevo had no knowledge of the serious medical condition Plaintiff was allegedly experiencing. This conclusion is further supported by the

medical evidence submitted in this case.  The parties have both submitted copies of portions of Plaintiff's medical records.  (Dkt. #16, Exhibit 2; Dkt. #26, Exhibits B, M-N).  These medical records reveal no evidence that Plaintiff's condition was so serious that Defendant Prevo should reasonably have suspected that Plaintiff was suffering from more than a headache as he reported.  Because Defendant Prevo has presented evidence demonstrating that he was not aware that Plaintiff had allegedly suffered a seizure, he cannot be liable for allegedly denying treatment for such.  Instead, the evidence reveals that Plaintiff told Defendant Prevo that he was experiencing a headache.  Prevo's response to such, instructing Plaintiff to complete a health care request and come to Health Services to be examined, was appropriate and does not constitute deliberate indifference to a serious health need.

In response to Defendant's motion for summary judgment (and in support of his own motion for summary judgment), Plaintiff has submitted certain evidence, none of which advances his cause.  Most of this evidence simply fails to establish the existence of a genuine factual dispute as to whether Defendant Prevo knew of and disregarded a risk to Plaintiff's health or safety.  (Dkt. #26, Exhibits A-B, D-P).[1]  The only evidence submitted by Plaintiff which *could* demonstrate the existence of a genuine factual dispute as to this issue is a purported affidavit executed by Plaintiff.  (Dkt. #26, Exhibit C).  However, because this document has not been properly notarized or sworn to, the Court cannot consider it in response to Defendant Prevo's motion for summary judgment.

To constitute an "affidavit" which the Court may consider in opposition to a motion for summary judgment, the document in question must be "sworn to by the affiant in front of an 'officer authorized to administer oaths.'"  *Peters v. Lincoln Electric Co.*, 285 F.3d 456, 475 (6th Cir. 2002); *see*

---

[1] Four of these exhibits, "affidavits" from other prisoners, are copies of documents submitted with Plaintiff's complaint. (Dkt. #1, Exhibits N-P; Dkt. #26, exhibits G-H, J-K).

*also*, *Nassif Ins. Agency v. Civic Property and Casualty Co.*, 2005 WL 712578 at *3 (6th Cir., Mar. 30, 2005) ("an affidavit which is. . .not notarized cannot qualify as proper Rule 56 evidence"). Federal law does, however, allow "unsworn declarations" made "under penalty of perjury" to substitute for a properly executed affidavit. *See* 28 U.S.C. § 1746.

Plaintiff's "affidavit" was not notarized or sworn to in the presence of an "officer authorized to administer oaths." Likewise, it was not executed "under penalty of perjury."[2] In short, Plaintiff's "affidavit" is nothing more than an unsworn statement which the Court is precluded from considering in opposition to a Rule 56 motion for summary judgment.[3] Accordingly, the Court recommends that Defendant Prevo is entitled to summary judgment as to this particular claim.

B.     Medical Request Kites

Plaintiff asserts that between July 16, 2007, and July 20, 2007, he submitted three kites requesting medical treatment. Defendant Prevo responded to all three of these requests. Plaintiff asserts that Defendant Prevo's response to his requests for medical treatment were inadequate and violated his Eighth Amendment rights.

Plaintiff submitted with his complaint, the three medical requests at issue. (Dkt. #1, Exhibits C-E). In a request dated July 16, 2007, Plaintiff reported that he was "suffering from a migraine headache" and that he thought he "had a seizure" earlier that evening during which he experienced

---

[2]  The Court notes that the various "affidavits" Plaintiff submitted from other prisoners suffer from this same defect. (Dkt. #1, Exhibits N-P; Dkt. #26, Exhibits G-K, P).

[3]  The Court recognizes that a verified complaint signed under penalty of perjury "carries the same weight as would an affidavit for the purposes of summary judgment." *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008). The Court notes, however, that Plaintiff's complaint was not signed under penalty of perjury or otherwise "verified." Plaintiff's response to the present motion was also not signed under penalty of perjury or otherwise "verified."

difficulty breathing.  (Dkt. #1, Exhibit C).  In a request dated July 19, 2007, Plaintiff reported that he was still "having migraine headaches and throwing up."  (Dkt. #1, Exhibit D).  In a request dated July 20, 2007, Plaintiff reported that he was "suffering from migraine headaches which is affecting my breathing."  (Dkt. #1, Exhibit E).

In his affidavit in support of his motion for summary judgment, Defendant Prevo asserts the following.  (Dkt. #16, Exhibit 1).  Health Services did not receive the aforementioned requests for medical treatment until July 23, 2007.  Defendant Prevo responded to Plaintiff's kites the following day, informing Plaintiff that he was scheduled for an examination.  *Id.*  Evidence in Plaintiff's medical records confirms that Health Services received Plaintiff's three medical request kites on July 23, 2007.  (Dkt. #16, Exhibit 2 at pages 8-10[4]).  These documents reveal that Defendant Prevo responded to Plaintiff's kites between 12:22 a.m. and 12:27 a.m. on July 24, 2007.  These documents further reveal that in response to Plaintiff's kites, Defendant Prevo initially scheduled Plaintiff for an examination "on or about" July 27, 2007.  *Id.*

Defendant Prevo further asserts that while processing Plaintiff's kites, he "noticed that Plaintiff had a previously scheduled annual health screen appointment on July 24, 2007."  (Dkt. #16, Exhibit 1).  Prevo "added Plaintiff's new medical complaint regarding his headache to this appointment."  Plaintiff, however, "failed to come to his appointment on July 24, 2007."[5]  Plaintiff's appointment was rescheduled for July 27, 2007.  This appointment was subsequently cancelled, however,

---

[4]  These page numbers refer to the sequential numbers located in the lower right hand portion of the exhibit's documents, beginning on the seventh page therein.

[5]  This is confirmed by medical records submitted by Defendant Prevo.  (Dkt. #16, Exhibit 2 at 11).

"due to no medical practitioner coverage."[6]  Plaintiff was examined by a nurse on August 1, 2007.  (Dkt. #16, Exhibit 2 at 14).

This evidence establishes that Defendant Prevo adequately responded to Plaintiff's request for medical treatment.  On July 23, 2007, Health Services received Plaintiff's requests for treatment.  In the early morning hours of July 24, 2007, Defendant Prevo responded to Plaintiff's requests, scheduling him for an examination.  This examination was initially scheduled for "on or about" July 27, 2007.  However, upon realizing that Plaintiff was already scheduled to be examined later that same day, Prevo included Plaintiff's migraine complaints to this previously scheduled appointment.  Defendant Prevo's response to Plaintiff's requests for medical treatment was appropriate and did not violate Plaintiff's Eighth Amendment rights.  Defendant Prevo can hardly be held liable because Plaintiff chose not to attend his scheduled appointment.  Plaintiff has submitted no admissible evidence which demonstrates the existence of a genuine factual dispute concerning this particular claim.  Accordingly, the Court recommends that Defendant Prevo is entitled to summary judgment as to this particular claim.


II.         **Plaintiff's Eighth Amendment Claims Against Defendant Saladin**

As discussed above, Plaintiff asserted a grievance against Defendant Prevo.  This grievance was denied at Step I by Defendant Saladin.  Plaintiff asserts that Saladin failed to properly investigate his grievance, thereby placing blame for his failure to obtain medical treatment on Officer Harris.  Plaintiff asserts that Saladin acted with deliberate indifference in violation of his Eighth Amendment rights.

---

[6]  This is confirmed by medical records submitted by Defendant Prevo.  (Dkt. #16, Exhibit 2 at 13).

Liability in a § 1983 action cannot be premised upon passive behavior or an alleged failure to act, rather liability must be based upon active unconstitutional behavior. *See Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Salehpour v. University of Tennessee*, 159 F.3d 199, 206-07 (6th Cir. 1998), *cert. denied*, 526 U.S. 1115 (1999).   Accordingly, liability in a § 1983 action does not attach based upon allegations that a defendant simply denied a prisoner's grievance. *See Skinner v. Govorchin*, 463 F.3d 518, 525-26 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lee v. Michigan Parole Board*, 2004 WL 1532563 at *2 (6th Cir., June 23, 2004) ("[s]ection 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act upon information contained in a grievance"); *Alder v. Correctional Medical Services*, 2003 WL 22025373 at *2 (6th Cir., Aug. 27, 2003) ("[t]he mere denial of a prisoner's grievance states no claim of constitutional dimension").   The Court recommends, therefore, that Defendant Saladin is entitled to summary judgment as to this particular claim.

### III.          Plaintiff's Conspiracy Claims

Plaintiff asserts that Defendants Prevo and Saladin conspired to blame Officer Harris for the violation of his Eighth Amendment rights.   Plaintiff has failed to indicate whether these particular claims are grounded in federal or state law.   This is of no consequence, however, as Plaintiff's claims fail under either body of authority.

Under federal law, it is improper for "two or more persons" to conspire "for the purpose of depriving, either directly or indirectly," an individual of his civil rights. 42 U.S.C. § 1985.   Plaintiff's claim fails, however, because as previously discussed Plaintiff cannot establish that the alleged conspiracy deprived him of a right or privilege protected by the laws or Constitution of the United States.

*See Sawyer v. Lexington-Fayette Urban County Government*, 2001 WL 1006237 at *2 (6th Cir., Aug. 21, 2001) (citing *Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996)).  Plaintiff's conspiracy claim also fails under Michigan law.  *See Karkoukli's, Inc. v. Walgreen Co.*, 2004 WL 435384 at *10-11 (Mich. Ct. App., Mar. 9, 2004) ("a claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable tort").  The Court, therefore, recommends that Defendants Prevo and Saladin are entitled to summary judgment as to Plaintiff's conspiracy claims.


IV.         **Plaintiff's Motion for Summary Judgment**

In conjunction with his response to Defendants' motion for summary judgment, Plaintiff moves for summary judgment.  In support of his motion, Plaintiff relies on the evidence submitted in support of his opposition to Defendants' motion for summary judgment.  As discussed above, this evidence, much of which the Court is precluded from even considering, fails to demonstrate that Plaintiff is entitled to the relief he seeks.  Accordingly, the Court recommends that Plaintiff's motion for summary judgment be **denied**.


**CONCLUSION**

For the reasons articulated herein, the undersigned recommends that <u>Defendants' Motion for Summary Judgment</u>, (dkt. #15), be **granted**; Plaintiff's <u>Motion for Summary Judgment</u>, (dkt. #26), be **denied**; and Plaintiff's action **dismissed**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file

objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date:  April 22, 2009

\_\_\_/s/ Ellen S. Carmody_____
ELLEN S. CARMODY
United States Magistrate Judge